## UPTON v. RAILROAD.

(Filed April 23, 1901.)

1. NEGLIGENCE—*Contributory Negligence—Railroads—Nonsuit.*

   Upon the evidence in this case the plaintiff was properly nonsuited.

2. PLEADING—*Contradictory Defenses—The Code, Sec. 245.*

   Contradictory defenses are permissible under section 245 of The Code.

ACTION by T. L. Upton and Ella Upton, administrators of J. A. Upton, against the South Carolina and Georgia Extension Railway Company, heard by Judge *E. W. Timberlake* and a jury, at Spring Term, 1901, of McDOWELL County Superior Court. From a judgment of nonsuit, the plaintiffs appealed.

*Justice & Pless,* and *J. T. Perkins,* for the plaintiffs.
*P. J. Sinclair,* for the defendant.

MONTGOMERY, J.   The intestate of the plaintiff was killed
by a train of the defendant, which was moving northwardly
toward Marion from Thermal City, at about 8 o'clock of the
night of the 24th of March, 1900.   There was no witness to
the occurrence.

It is alleged in the complaint that the intestate was "sitting
on the track on the end of a cross-tie asleep, with his head
and body bowed forward and his back to the track and to the
west, in an apparently unconscious and helpless condition."

The evidence introduced by the plaintiff, to be taken as
true, because at its close his Honor granted the motion made
by the defendant for judgment as of nonsuit and for dismissal
of the action, disclosed the following facts:   The intestate
about two hours before his death was seen to be about half
drunk, but able to handle himself all right, as one of the wit-
nesses said.   He was found about an hour after he was killed
lying along the east side of the track, on his right side, with
his face turned to the cross-ties, three or four inches off, his
head towards Marion and his feet toward the south, a foot
from the ties.   On either side of one of the cross-ties there
was a shoe print on the soft ground, the heels towards the
iron and the soles projecting beyond the cross-ties a few
inches.   When the body was found, the feet were the distance
of the width of a cross-tie from the tie on which he apparently
had been sitting.   The back of the head was crushed in, the
wound being ostensibly about two inches long and an inch
wide, the blood and brains oozing out.   There was a bruise
on the right shoulder five inches long in the shape of an L
and a bruised place on the right arm about three fingers wide.
The wheels had not run over the intestate, nor had the body
been dragged by the train.   One of the witnesses, after de-

scribing the various parts of the machinery and the attachments of the engine and cars, in answer to a question by the counsel of plaintiff as to what part of a man's body would be struck and what would strike him if he was sitting on the end of the cross-tie with his feet on each side and his face from the track, stated: "I know he would be struck on the upper part of his body, about the head or shoulders. It would depend a great deal on where he was sitting on the ties and what position he was in, where he would be struck. I think it possible a man sitting on the end of a tie, if he was humped away over, perhaps it would not strike him; but if he was sitting in anything like an upright position, I don't believe he could sit there without being hit." The same witness also said that that part of the train which was lowest, the machinery, would strike him, and that the boxes which hold the axles were the lowest parts of the machinery, but that they did not project as far as the steps; that he could hardly tell what would strike him first. "I would think that the step would, if it came on first. There are parts of the engine, though, that come before the steps."

The complaint and answer were also put in evidence.

We do not see any error in the granting of the motion by his Honor. As we have said, there was no eye-witness to the occurrence, and it was an hour or more after the intestate was killed before the body was found. The allegation in the complaint then was purely theoretical as to the position of the intestate when he was struck, and there was nothing in the evidence going to prove the allegation of the complaint that the intestate was sitting on the track on the end of a cross-tie asleep, with his head and body bowed forward. The evidence shows beyond question, from the nature of the wounds and the testimony as to the shoe prints that the intestate was not standing when he was struck; that he was not between the rails or lying down, but that he must have been

sitting. If, then, he was struck while in the position in which he was alleged to have been in the complaint, he was guilty of negligence in placing himself in such a perilous situation. *Arrowwood v. R. Co.,* 126 N. C., 629; *McAdoo v. Railroad Co.,* 105 N. C., 140. And if he was awake and sat down on the cross-tie to rest, or for any other purpose, and was stricken by a moving engine, his refusal or failure to keep a sharp lookout and to get off the track on the approach of the engine was a negligent act on his part. *Norwood v. Railroad,* 111 N. C., 236; *Wykoff v. R. Co.,* 126 N. C., 1152; *Flake v. R. Co.,* 125 N. C., 744.

The intestate having been negligent, before a recovery can be had against the defendant on the ground of its negligence in not availing itself of "the last clear chance," it must be shown by the plaintiff, by proper evidence, not simply that the intestate was on the track in the way of the engine, but that he was there apparently asleep or in other helpless condition, and that the engineer had discovered his situation, or by keeping a reasonable watchout could have discovered it in time to have prevented the injury, and that after he had discovered it, or could by proper watchfulness have had reasonable ground to believe that such was the condition of the intestate, he failed to use all available means to prevent the injury. *Norwood v. Railroad,* 111 N. C., 236.

There is no presumption in this State of negligence against railroad companies upon simple proof of injuries or death caused by their trains.

We will now refer to the character of the evidence offered by the plaintiff. A description of the wounds, as given by the witnesses and recited in this opinion, throws no light upon the position of the intestate when he was struck, except that he was sitting on the end of a cross-tie with his face from the track. Neither does the nature or location of the wounds, nor the evidence of Sheriff Neal in describing the machinery

and the appliances of the engine and cars, tend in the least to prove what particular part of the engine or coaches or their appliances struck him. The testimony of Thomas Upton, a witness of the intestate, that there was a wound on the right shoulder, in the shaps of an L over five inches long, furnished an argument to counsel that that evidence ought to have been submitted to the jury as tending to prove that the intestate was struck by one of the steps of the coaches. It did not reach to the height of evidence. There was nothing brought out to show the size, shape or length of the steps, or how far they projected, or what part of them might have struck the intestate's shoulder. And if there had been such testimony, it would have been no proof as to the position of the intestate, except that he was sitting. In truth, there is nothing in the evidence in the least going to show that the head or shoulders of the intestate were bowed or lowered as he sat on the ties, and that fact was necessary to be proved before the defendant could be shown negligent, in view of the law which we have announced as governing this case.

In reference to that part of the evidence consisting of the complaint and answer, it was contended by the plaintiff's counsel that the second defence interposed by the defendant was an admission of that part of the seventh allegation of the complaint, in which it was alleged that the intestate was sitting on the track, on the end of a cross-tie asleep, with his head and body bowed forward. The pleader had in the first defence emphatically denied, with great particularity, each and every charge in allegation seven of the complaint. And it was especially denied that the intestate's head and body were bowed forward, and that he was asleep or in an apparently helpless condition.

In the second defence, the defendant avers that the intestate was negligent in sitting down on the end of a cross-tie *as alleged in the complaint,* and in a place plainly hazardous,

128——12

and where the defendants' servants could not by due diligence have discovered his dangerous position; and that he was further negligent in sitting down and falling asleep in such a dangerous position, placing himself thereby in such a situation as to be unable to see or hear the train.

If these defences are contradictory, such a course of pleading is permissible under section 245 of The Code. But the second defence may be considered as a plea of the contributory negligence of the plaintiff, although that plea was not necessary to be made in this action, because the complaint stated facts which in law constituted negligence on the part of the plaintiff, and there was no negligence imputed in the complaint to the defendant, except that it had the "last clear chance" to avoid killing the intestate, and failed to stop the train in time to prevent his death. We think, taking the answer together, that it can not be construed to be an admission without qualification of the seventh allegation of the complaint.

No error.