PARKS v. SOUTHERN RY. CO.

(Circuit Court of Appeals, Fourth Circuit. February 7, 1906.)

No. 627.

1. DISMISSAL AND NONSUIT—FEDERAL PRACTICE—DISCRETION OF COURT.

In a state where a plaintiff is entitled to take a nonsuit as a matter of right, such right must be exercised in a federal court before the cause has been submitted for decision either to the court or jury. On the making of a motion by defendant for direction of a verdict, plaintiff is required to elect whether or not he will take a nonsuit, and, if he submits the cause for determination on the motion, it is within the discretion of the court to grant the motion and to refuse to permit a nonsuit, although such discretion should be so exercised as not to work an injustice to plaintiff.

[Ed. Note.—For cases in point, see vol. 17, Cent. Dig. Dismissal and Nonsuit, § 31.

Conformity of practice in federal courts in common-law actions to that of state courts, see notes to O'Connell v. Reed, 5 C. C. A. 594; Nederland Life Ins. Co. v. Hall, 27 C. C. A. 392.]

2. RAILROADS—KILLING OF PERSON ON TRACK—PROOF OF NEGLIGENCE.

Plaintiff's intestate was a flagman employed by defendant railroad company which was changing the grade of its road, and he had been working continuously for three days without rest or sleep. About noon of the third day he was sent down the track to flag a train, and was killed, as the evidence in an action to recover for his death tended to show, by the train which he was to flag. A witness testified that some time before the arrival of the train he passed deceased, who was then lying on the outside of the ties and appeared to be drowsy, but he "raised up" and spoke to the witness. There was no direct evidence as to the manner of the accident. It was shown that the track in the direction from which the train approached was level, straight, and unobstructed for a distance of 500 yards from the place, and that the train could have been stopped in about 200 yards. Held, that such evidence was insufficient to establish negligence on the part of defendant, and that the court properly directed a verdict in its favor.

In Error to the Circuit Court of the United States for the Western District of North Carolina.

J. W. Keerans (I. T. Avery, W. L. Pearson, and Osborne, Maxwell & Keerans, on the brief), for plaintiff in error.

L. C. Caldwell (A. H. Price and G. F. Bason, on the brief), for defendant in error.

Before PRITCHARD, Circuit Judge, and WADDILL and KELLER, District Judges.

PRITCHARD, Circuit Judge. This is an action by plaintiff in error to recover damages for the alleged negligent killing of the intestate, S. Arthur Parks. The intestate was a flagman in the employment of Oliver & Co., who were engaged in changing and reducing the grade of the Western North Carolina Railroad then owned and operated by the defendant, the Southern Railway Company. The intestate had worked from Monday afternoon until Thursday afternoon constantly, without sleep, and was very much in need of rest. On November 22, 1901, about 12 o'clock, he was sent to flag train known as No. 11. When last seen alive, he was on the outside of the track, with his right arm under his head resting on a cross-tie. The witness Garrison, who last saw the deceased alive, said "he was laying down on the track with his right arm under his head on the outside on the ties." He said that he called to him and "he raised up and spoke; he looked like he was tired and sleepy." This was only a short time before the intestate was killed. Garrison testified that he had walked about 600 or 700 yards before passenger train No. 11, which killed the intestate, passed him. The track for about 500 yards in the direction in which train No. 11 was approaching was straight, level, and without any obstructions whatever. It was shown that a train of about the same number of cars and running at about the same rate of speed had been frequently stopped within a distance of about 200 yards near where the intestate was killed.

It is insisted by the plaintiff in error that the court below erred, first, in refusing to permit the plaintiff in error to take a nonsuit after all the plaintiff's evidence had been introduced, and after the defendant had made a motion to instruct a verdict in his behalf, and the court upon argument of such motion had passed thereon favorably to the defendant; and, secondly, in directing the jury to find a verdict in favor of the defendant in error. We think that under the circumstances it was within the discretion of the court to either permit the plaintiff to take a nonsuit or to direct a verdict in favor of the defendant in error. In the case of Randall v. Baltimore & Ohio R. R. Co., 109 U. S. 482, 3 Sup. Ct. 324, 27 L. Ed. 1003, Mr. Justice Gray, who delivered the opinion of the court, among other things said:

"It is the settled law of this court that when the evidence given at the trial, with all inferences that the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant." Pleasants v. Fant, 22 Wall. 116, 22 L. Ed. 780; Griggs v. Houston, 104 U. S. 453, 26 L. Ed. 840; Herbert v. Butler, 97 U. S. 319, 24 L. Ed. 958; Bowditch v. Boston, 101 U. S. 16, 25 L. Ed. 980.

The court may in such cases direct a verdict and it necessarily follows that in the exercise of a sound discretion it has the power to deny a motion for nonsuit and direct a verdict in favor of the defendant.

In the case of Huntt v. McNamee (decided at the last term of this

court) 141 Fed. 293 Judge Goff, in discussing the question, laid down the law in a clear and forceful manner as follows:

" * * * The courts of the United States have always exercised the right to control the disposition of causes pending before them, when either the allegations of the plaintiff or the evidence introduced in support thereof has failed to make out a case. Merchants' Bank v. State Bank, 10 Wall. 604, 19 L. Ed. 1008; Pleasants v. Fant, 22 Wall. 116, 22 L. Ed. 780. For a number of years the Supreme Court of the United States declined to entertain writs of error upon nonsuits. That court has held that the Circuit Courts of the United States have no authority to order a nonsuit in invitum. Elmore v. Grymes, 1 Pet. 468, 471, 7 L. Ed. 224; Crane v. Morris, 6 Pet. 597, 8 L. Ed. 514; Castle et al. v. Bullard, 23 How. 172, 183, 16 L. Ed. 424; Schuchardt v. Allens, 1 Wall. 359, 370, 17 L. Ed. 642; Coughran v. Bigelow, 164 U. S. 301, 307, 17 Sup. Ct. 117, 41 L. Ed. 442. Where the record disclosed that the plaintiff had voluntarily become nonsuited, a writ of error was refused him. Evans v. Phillips, 4 Wheat. 73, 4 L. Ed. 516; Cossar v. Read, 17 Q. B. 540; Central Trns. Co. v. Pullman's Car Co., 139 U. S. 24, 39, 11 Sup. Ct. 478, 35 L. Ed. 55. These cases cited are instructive as they relate to the questions involved in the assignments of error pertaining to the request for a nonsuit.

"While the general rule is as above indicated, still the Supreme Court has by means of exceptions taken during the trial, in states where statutes authorized nonsuits, passed upon the questions here involved, and has discussed the matter of ordering a nonsuit. Mr. Justice Field, in the case of Oscanyan v. Arms Co., 103 U. S. 261, 26 L. Ed. 539, says, in substance, that the difference between a motion to direct a nonsuit and a motion to direct a verdict for defendant is rather a matter of form than of substance, except that the latter ends litigation if a new trial be not granted. The rule is undoubtedly well established that it is within the authority of the presiding judge to direct a verdict, and to enter judgment thereon. The court below, having no doubt that the plaintiff had failed to make out a case, properly gave the directions it did. It would have been a waste of time to have permitted the case to proceed further, if the result was as the court indicated an inevitable one. In Pleasants v. Fant, supra, Mr. Justice Miller said: 'Must the court go through the idle ceremony in such a case of submitting to the jury the testimony on which plaintiff relies, when it is clear to the judicial mind that if the jury should find a verdict in favor of the plaintiff that verdict could be set aside and a new trial had? Such a proposition is absurd, and accordingly we hold the true principle to be that if the court is satisfied that, conceding all the inferences which the jury could justifiably draw from the testimony, the evidence is insufficient to warrant a verdict for the plaintiff, the court should say so to the jury.' * * * Even if it be admitted that the plaintiff below had the right to demand a nonsuit during the progress of his cause [it is at least questionable after a trial has begun, see Johnson v. Bailey et al. (C. C.) 59 Fed. 670], certainly it must also be admitted that such right must be reasonably exercised. A nonsuit cannot be demanded after a full adjudication. In this case the defendant had submitted his motion that the jury be instructed to find for him. This motion, similar to a demurrer to the evidence, presented a question of law for the court to decide. Louisville, etc., R. R. Co. v. Woodson, 134 U. S. 614, 621, 10 Sup. Ct. 628, 33 L. Ed. 1032. The court, in deciding said motion, reached the conclusion that the plaintiff could not recover because the allegations of his complaint would not support a verdict. This judgment of the court disposed of the controversy, and it was only after such disposition that the plaintiff asked for a nonsuit. The trial judge, also, in disposing of said motion announced his conclusion that the evidence introduced by the plaintiff did not sustain his contention. It was after this that the plaintiff asked permission to enter a nonsuit, with permission to appeal. We think that his request, in each instance, was submitted too late. After the trial judge had decided these questions, the plaintiff had no more right to withdraw his case than he would have had if the case had been submitted to the jury on the

facts, and a verdict had been returned. As pertinent to this situation, we refer to the case of Cahill v. Chicago, M. & St. P. Ry. Co., 74 Fed. 285, 290, 20 C. C. A. 184, where Judge Woods, speaking for the Circuit Court of Appeals of the Seventh Circuit, says: 'We deem it proper to observe here that it is not essential that there be a written verdict signed by jurors or by a foreman, and we have no doubt that, in cases where the court thinks it right to do so, it may announce its conclusion in the presence of the jury and of the parties or their representatives, and direct the entry of a verdict without asking the formal assent of the jury. Until a case has been submitted to the jury for its decision upon disputed facts the authority of the court, for all the purposes of the trial, is, at every step, necessarily absolute; and its ruling upon every proposition, including the question whether, upon the evidence, the case is one for the jury, must be conclusive until upon writ of error it shall be set aside."

At common law the action of the court upon a motion for a nonsuit was not a discretionary one, but the plaintiff, as of right, could at any time before verdict exercise this privilege; and this is now substantially the rule in North Carolina. But the more reasonable practice, certainly so far as the federal courts are concerned, is that the plaintiff has the right to take a nonsuit at any time before the case has been submitted to the judge or jury for determination. The plaintiff upon the making of a motion to instruct a verdict against him, that being one of the methods in the federal court of finally disposing of the cause, should then elect whether or not he will take a nonsuit, and not submit his cause upon a full hearing of that motion to the court, and take chances of an adverse decision thereon. From the time of the submission of the motion to instruct a verdict the granting of a nonsuit lies wholly in the discretion of the court; and if the court should be of the opinion that the plaintiff for any reason has been deprived of a right to submit all the evidence on which he relied, or anything should occur during the trial in the nature of a surprise to the plaintiff, there should be a liberal exercise of this discretion in his favor. In this case no evidence was introduced by the defendant, and it is not intimated that the plaintiff had any further evidence which would tend in the slightest degree to strengthen the case as presented to the court below. We are therefore unable to see that any good purpose could have been served by allowing the plaintiff to take a nonsuit.

It is highly important that the court in the exercise of its discretion should not only see that equal and exact justice is done between litigants, but it is equally important that needless litigation should be speedily determined, and in the trial of cases the court should consider the rights of the defendant as well as those of the plaintiff, and where it appears that all the evidence which it is possible to obtain has been offered and the case has been submitted to the jury or to the court it is the duty of the court, if in its opinion the evidence is not sufficient to justify a verdict in favor of the plaintiff, to direct the jury to return a verdict in favor of the defendant. The courts are not organized for the purpose of permitting the plaintiff in an action to experiment with a certain state of facts for the purpose of ascertaining the opinion of the court as to the law applicable to the same and then permit him to withdraw from the scene of con-

flict and state a new cause of action and mend his licks in another direction. Such policy, if adopted, would be productive of much mischief, and should not be tolerated. But, as we have already stated, if the court can see any good reason why the plaintiff, on account of surprise or otherwise, will be denied the right to have his case fairly considered by the court, then, in the exercise of a sound discretion, it should not hesitate to permit the plaintiff to take a nonsuit in order that the ends of justice may be fully and satisfactorily met. In view of the evidence in this case, we are of opinion that the action of the court in refusing to grant the motion of the plaintiff for nonsuit was proper.

The second assignment of error relates to the exception of the plaintiff to the action of the court in directing the jury to return a verdict in favor of the defendant. In order to ascertain whether the court erred in directing a verdict in favor of the defendant in error, it is necessary to determine whether there was sufficient evidence as to the negligence of the defendant in error to justify a verdict in favor of the plaintiff on the first issue submitted to the jury. There was no direct testimony as to how the accident occurred, nor as to the position the deceased occupied at the time he was injured. The witness Garrison testified that he passed along the track where the accident occurred a short time before it happened, and saw the intestate lying on the track with his hand under his head on the cross-ties, and he looked like he was tired and sleepy and his eyes were towards Asheville, and being further questioned as to what part of the track on which the defendant was lying said "on the outside of the ties." He also said that he called to him and that he "raised up and spoke to him." He did not undertake to say to what extent he arose, but he did say that he was awake and his eyes were towards Asheville, and that he appeared to be in a drowsy condition. The witness said he went on his way and had gone about 600 or 700 yards when train No. 11 passed him, and that the train was running about 15 or 20 miles an hour. In the case of Upton v. Railroad Co., 128 N. C. 176, 38 S. E. 736, among other things, it is said:

"There is no presumption in this state of negligence against railroad companies upon simple proof of injury or death caused by their trains."

While the evidence in this case tends to show that the intestate was killed by the train of the defendant in error, at the same time there was no evidence from which the jury could have reasonably inferred that the intestate's death was caused by the negligent acts of the defendant in error.

In the case of Clegg v. Railroad Co., 133 N. C. 303, 45 S. E. 657, a suit was instituted against the railroad company for the alleged killing of the plaintiff's intestate. The evidence in that case tended to show that a short time before the passing of one of the defendant's trains on the track the intestate, not drunk, but under the influence of strong drink, was seen going in the direction of the railroad track and was soon thereafter found dead near the side of the track; that there was a dirt road which ran parallel with the railroad at that point, but there was no crossing; that at the place

where he was killed the track was straight for half a mile or more, but there were no eyewitnesses, and there was no evidence that the intestate had been run over by the engine. It was shown by the defendant that there was no sign of blood on the cross-ties. On the other hand, one of the plaintiff's witnesses said that next morning there was some blood on the cross-ties, but he could not say whether it was between the rails or on the outside. In that case the court held that "there was no evidence tending to show that the intestate was on the track in a helpless condition," and therefore that the plaintiff was not entitled to recover upon the theory that there was no evidence that the death of the intestate was caused by the negligence of the defendant.

In the case at bar, under the circumstances, the jury might have reasonably inferred that the intestate was killed by the defendant in error's train, but there was not sufficient evidence to raise the presumption that his death was caused by the negligence of the defendant in error.

In view of the fact that the witness Garrison testified that, when he last saw the intestate, he was awake and had "raised up" to talk to him, the presumption is that he was in possession of his mental faculties, and that he would do that which was necessary to insure his protection and safety. Therefore, in order to show that the death of the intestate was due to the negligence of the plaintiff in error, it was incumbent on the plaintiff in error to prove that at the time the intestate received the injury he was either sitting or lying upon the track in an apparently helpless condition and that the engineer saw him in time, or could by the exercise of due diligence have seen in time, to have avoided the accident, by stopping the train or by giving the proper signals of warning, and that he failed to do so. But there is a total absence of proof as to whether the intestate was lying down or sitting upon the track at the time he received the injury. In view of the evidence we are of opinion that the court did not err in instructing the jury that the "plaintiff's evidence, uncontradicted, with all legal and reasonable inferences to be drawn therefrom, was not legally and reasonably sufficient to warrant a recovery."

For the reasons stated, the judgment of the Circuit Court is affirmed.