Action to recover damages for the negligent killing of plaintiff's intestate, Cicero L. Wyatt. The defendant's car was proceeding north on its way from Salisbury to Spencer, running at the rate of about 12 to 15 miles an hour. The intestate had been seen walking from Spencer to Salisbury, and when struck by the car was sitting on the west side of the track, with his elbows resting on his knees and "bent over to conform to that position." There was evidence on the part of the *Page 26 
plaintiff that the night was dark, but not foggy, and that the intestate could have been seen for 300 or 400 feet, and he was actually seen by the witness Austin at a distance of about 400 feet. The intestate's son, who was on the car in search of his father, saw the motorman talking to Mr. Caddell, who was on the front platform, a few seconds before the car struck Wyatt. There was an electric headlight on the car. The track was nearly level for about 150 feet on the south side of the place where Wyatt was sitting, and straight at that point for a mile. The car could have been stopped in about a car's length, (32) and it was stopped within that distance, 25 or 30 feet, that being a car's length. The body, when found, was lying 8 or 10 feet behind the car, between the rails. There was further evidence that the fender on the front of the car, a safety device, was defective, that is, too high and narrow, not properly equipped and out of date. On the other hand, there was evidence for defendant contradicting that of plaintiff. The motorman stated that he was not talking to Caddell, but keeping a proper lookout, and that it was dark and foggy, and for this reason he could not and did not see the man until he got within 30 or 35 feet of him, when he did all in his power to stop the car, applying the brakes and reversing the current, and it was not possible to stop the car sooner than he did. He had received a bell to stop at Carter's, a near-by station, and was "drifting at the rate of 15 miles, and sounding the gong," when he first saw Wyatt sitting on the track. He immediately tried to stop the car by the use of all available means. He said there was no indication to him that Wyatt was helpless or could not take care of himself at the time he first saw him and applied the brakes and reversed the current. The witness for both parties were corroborated. It was admitted that the defendant had a proper headlight on the car that night, and that the car was running at the usual speed.
The court submitted issues, which were answered as follows:
1. Was the plaintiff's intestate, said Cicero L. Wyatt, killed by the negligence of the defendant company, as alleged in the complaint? Answer: Yes.
2. Did the deceased, Cicero L. Wyatt, by his own negligence, contribute to his death? Answer: Yes (by consent).
3. Notwithstanding the negligence of plaintiff's intestate, could defendant, by the exercise of ordinary care, have avoided killing Cicero Wyatt? Answer: Yes.
4. What damage is plaintiff entitled to recover? Answer: $1,250.
The only question in the case was raised by the defendant's motion to nonsuit and his prayer for instruction, which was substantially, that *Page 27 
there was no evidence of negligence, or, to be more exact, that Wyatt was in a helpless condition or not in possession of his faculties, so that he could not see and hear, at the time he was sitting on the track, both of which were denied. Defendant duly excepted, and appealed from the judgment. (33)
We may pretermit any extended reference to the evidence as to the defective condition of the fender, which would be sufficient, perhaps, to justify the ruling of the court by which the nonsuit and the instruction were refused. The statute, Acts 1901, ch. 743; Revisal, secs. 2616 and 3801, require that street railway companies shall furnish their cars with "practical fenders" to prevent injuries to those using their tracks. If the company did not comply with this provision, it was evidence of negligence, or a circumstance from which negligence could be inferred by the jury, and if the negligence was found by the jury and was the proximate cause of the intestate's death, it became actionable. Henderson v. Traction Co.,132 N.C. 779. But we will not rest our decision upon any such ground, as we think there was other evidence of negligence, which was properly submitted to the jury and, we must presume, under correct instructions, as the charge is not in the record. S. v. Dickerson, 98 N.C. 708. We are not concerned with the weight of the evidence, as that is for the jury to consider. If it is construed in the light most favorable to the plaintiff, which is the rule, and there is, in that view, more than a scintilla of evidence, and such as rises above the plane of mere conjecture and is reasonably sufficient to prove the essential facts, it was proper to refuse the nonsuit, as such evidence carries the case to the jury. This Court has held that those operating trains and cars should keep a careful outlook for persons and obstructions on the track.Arrowood v. R. R., 126 N.C. 629; Pickett v. R. R., 117 N.C. 616;Sawyer v. R. R., 145 N.C. 24. We need not decide exactly the measure of vigilance required of a motorman on a street car in this respect, whether it should be constant and continuous, but it should be such as is reasonable and practicable, under the circumstances, and required by the duty to exercise ordinary care. In this case, the motorman said that he was "looking forward" as the car was approaching (34) the place where Wyatt was sitting on the cross-tie, and he failed to see him in time to stop the car before he was reached, because the night was dark and foggy. The jury might well infer from this *Page 28 
statement that the motorman saw Wyatt's situation in time to stop the car, when it is considered in connection with the other evidence that the track, which was laid upon the side of the public highway, was level for 150 feet and straight for a mile, and that Wyatt could be seen about 400 feet, with the headlight burning; so it cannot be said that there was no evidence of the motorman's ability to see Wyatt if he was looking ahead, and he testified that he was keeping a lookout and attending strictly to his business, instead of talking to Caddell. The fact that he looked and could see Wyatt is some evidence that he did see him. If he saw him the length of two cars, or say 70 feet, before Wyatt was struck, he could have stopped the car and avoided the injury.
Passing to the next point, there was evidence from which the jury could well have found that Wyatt was sitting in such a posture that any reasonably prudent man would at least suspect that he was asleep. There is no evidence that he was drunk, or even that he had been drinking, but he was bent over and evidently resting his head on his hands, as his elbows were upon his knees and he was "leaning forward to conform to that position," said the witness Caddell. There was evidence from which it might reasonably have been argued that he was asleep, and if not so, or otherwise insensible, he would have heard the sound of the gong and left the track. The motorman evidently thought that there was danger of injuring him, as he applied the brakes and reversed the current, he testified, as soon as he saw him. These energetic measures to which he resorted indicated his belief that Wyatt was unaware of his perilous situation or the approach of the car; but he was too late. If he looked and he saw him, and his situation was such as to produce the impression that he was oblivious to his surroundings, or if he was talking to Caddell and failed to look, he was negligent.
Edge v. R. R., 153 N.C. 212.
(35) The Court said in a case somewhat like this in its facts: "We do not think that, as a principle of law, it can be stated that where a trespasser is seen sitting upon the track, with his head in his hands and his hands resting on his knees, apparently asleep or unconscious, the presumption is that he will hear and obey the signals of the engineer warning him of the approach of the train. This undoubtedly would be true if the trespasser were walking or standing on the track. In that case the very fact that he was moving or standing up would indicate that he was not asleep or unconscious, but had possession of his faculties, and the engineer would have the right to suppose that he would hear and obey the danger signals. But the same rule would not necessarily prevail where the situation is as detailed in this case. A *Page 29 
man sitting on a cross-tie of a railroad track, apparently asleep or unconscious, presents an unusual, not to say extraordinary, spectacle, and we think it was the province of the jury to determine whether or not an engineer of ordinary prudence, seeing a man so situated, ought not to commence checking the train in time to prevent injuring him if it should transpire that he was unconscious or asleep." Starett v.R. R., 110 S.W. Rep. (Ky.), 282. It is true, the jury found that Wyatt was negligent, but even a trespasser on the track, situated as he was at the time of the catastrophe, does not forfeit his life or limb if, after his discovery or by the exercise of proper care, his dangerous position can be seen and realized and the consequent injury to him avoided. He was not committing any offense, but simply placed himself in a place of danger. It may be admitted that he had no right to use the track in that way, but the defendant had no right to kill him because he did. If the jury had found that the motorman was in the exercise of due care, the defendant would have been relieved from responsibility for his death; but unfortunately for the defendant, they did not take that view of the facts, but by their verdict have said that his life could have been saved by the exercise of ordinary care in the use of the means at the motorman's command, making out a case of actionable negligence. Hovins v. R. R., 76 Neb. 187. In the enjoyment and exercise of its franchise, the defendant is bound to recognize the rights of others. At common law, it is required to exercise ordinary care, to be measured in each case by the apparent situation (36) and the dangers naturally incident to the prosecution of its business. If a person be seen upon the track, who is apparently capable of taking care of himself, the motorman may assume that he will leave the track before the car overtakes him, but he cannot act upon that presumption with respect to a person who is apparently insensible of his danger from sleepiness, drunkenness, or any other like cause. Sibleyv. Ratliffe, 50 Ark. 477. In Henderson v. R. R., 159 N.C. 581, it was said by Justice Allen: "The allegation of negligence in the complaint is that the deceased was down on the track in an apparently helpless condition, and that the engineer of the defendant could have discovered him in time to stop the train before reaching him, by the exercise of ordinary care. The burden was on the plaintiff to prove the truth of this allegation and to establish in the minds of the jury: (1) that the deceased was down on the track in an apparently helpless condition; (2) that the engineer could have discovered him in time to stop the train before reaching him, by the exercise of ordinary care; (3) that he failed to exercise such care, and as a direct result the *Page 30 
deceased was killed," citing Clegg v. R. R., 132 N.C. 294, which is in point. We add Clegg v. R. R., on rehearing, 133 N.C. 303; Upton v. R. R.,128 N.C. 173; Guilford v. R. R., 154 N.C. 607. After a careful review of the facts, we are constrained to hold that there was some evidence of actionable negligence, and the motion and prayer of the defendant were both properly refused.
We have not discussed the relative and reciprocal rights of the street car company and the public in the use of the railway and the street or public road on which it was laid (Moore v. Street Railway Co.,128 N.C. 455), as the jury found that Wyatt was a trespasser and guilty of contributory negligence, not being at the time in the exercise of a right incident to the customary use of the street or road, such as crossing it, either at a crossing or between the crossings. That question, therefore, is not now before us.
No error.
Cited: Tyson v. R. R., 167 N.C. 217; Hill v. R. R., 169 N.C. 741.
(37)