BARRETT v. VIRGINIAN RY. CO.

(Circuit Court of Appeals, Fourth Circuit. July 5, 1917.)

No. 1521.

1. MASTER AND SERVANT ☞125(1)—INJURIES TO SERVANT—DEFECTIVE AP-
PLIANCES—KNOWLEDGE OF MASTER.

A master does not insure that appliances are in a safe and suitable con-
dition, and to entitle a servant to recover for personal injuries, it must
appear that the master had actual or constructive knowledge of the
defect alleged to have caused the injury.

2. MASTER AND SERVANT ☞278(14)—INJURY TO SERVANT—KNOWLEDGE OF
MASTER—EVIDENCE—SUFFICIENCY.

In an action for injuries alleged to have been caused by the defective
steps of an engine which plaintiff, as foreman of defendant's roundhouse,
was required to repair, evidence *held* insufficient to show that the de-
fendant had either actual or constructive notice of the defect.

3. WITNESSES ☞397—IMPEACHMENT—CONTRADICTORY STATEMENTS—SUBSTAN-
TIVE TESTIMONY.

Testimony of prior statements introduced to contradict the foreman
could only be considered for that purpose, and was in no sense sub-
stantive evidence.

4. MASTER AND SERVANT ☞265(13)—ASSUMPTION OF RISK—PATENT DEFECTS.

If the defective condition of the step of an engine was so patent as to
be readily observed by every one, and plaintiff before he was injured made
three trips over the step, he would be deemed to have assumed the risk
incident to his employment.

5. DISMISSAL AND NONSUIT ☞30—VOLUNTARY NONSUIT—MOTION—TIME.

Plaintiff was not as a matter of right entitled to a voluntary nonsuit
after the court had decided to direct a verdict for defendant, as a plain-
tiff should elect whether to take a nonsuit at the time of the making of a
motion for a directed verdict.

In Error to the District Court of the United States for the West-
ern District of Virginia, at Roanoke; Henry Clay McDowell, Judge.

Suit by S. D. Barrett against the Virginian Railway Company. Judg-
ment for defendant, and plaintiff brings error. Affirmed.

W. L. Welborn, of Roanoke, Va. (Welborn & Jamison and John G.
Challice, all of Roanoke, Va., on the brief), for plaintiff in error.

H. T. Hall, of Roanoke, Va., and G. A. Wingfield, of Norfolk, Va.
(Hall & Apperson, of Roanoke, Va., on the brief), for defendant in
error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

PRITCHARD, Circuit Judge. This is a suit instituted by plaintiff
in error, plaintiff below, in the District Court of the United States for
the Western District of Virginia, to recover damages on account of
injuries sustained by plaintiff, who was the foreman of the round-
house, while attempting to clean out a sand pipe which was stopped up.
Plaintiff was employed by the defendant as a machinist at Elmore, W.
Va., at which a roundhouse is maintained where engines are stored
and certain repairs are made.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Among other things, plaintiff, by virtue of his employment, was required to repair engines and other rolling stock at that point. The engine upon which plaintiff was working at the time he sustained the injury was being used and had been used for some time, in pusher and helper service. This particular engine had been placed upon what is known as the "ready track" to be employed in taking a train out of Elmore. After being placed, the engineer in charge discovered that the sand pipe was stopped up, and plaintiff was requested to clean it out. In order to perform this service it was necessary for the plaintiff to climb upon the engine. In front of the engine there were steps leading from the ground up over the pilot to the running board. In performing this service plaintiff made several trips up on the engine, and while coming down on the last trip he slipped and fell and sustained the injury upon which this action is based.

Plaintiff says that shortly after he had fallen and had been removed by other employés to a point several feet in front of the engine he looked at the engine and remarked that the step from which he slipped and fell was slanting from one to one and a half inches forward. However, there was no evidence offered tending to corroborate this statement by the other employés who were present. The other employés present testified that they did not observe that the step was slanting or that there was anything wrong with it. In addition to the plaintiff's testimony plaintiff introduced two other witnesses who said that they examined this step a month or two after the accident, and that it was slanting forward; the front portion of the step being from one to two inches lower than the rear portion.

Both the day and night foreman of the roundhouse at Elmore, who had charge of keeping the engine in repair, testified that they never knew there was anything wrong with the step. The engineer who had been running the engine and the hostler who had charge of it in the roundhouse also testified that they had no knowledge of any defect in the step. There was no evidence produced by the plaintiff to show how the alleged defect in the step was caused or how long it had been in that condition.

When all of the evidence had been introduced, the defendant moved the court to direct the jury to return a verdict in favor of the defendant. This motion was opposed by the counsel for the plaintiff, and after the motion was fully argued the court took the same under advisement from Saturday afternoon until Monday morning. When the court convened Monday morning the judge rendered an opinion in writing, which is made a part of the record, sustaining the defendant's motion to direct a verdict. After the court had rendered its decision, the plaintiff asked to be permitted to take a voluntary nonsuit. The court refused to grant plaintiff's request, and directed the jury to return a verdict in favor of the defendant, and judgment was entered accordingly. The plaintiff excepted, and the case now comes here on a writ of error.

[1] Only two points are involved in this controversy: First, as to whether the court below erred in directing a verdict in favor of the defendant; second, as to whether the court erred in refusing to permit

the plaintiff to take a nonsuit. It is earnestly contended by counsel that plaintiff's injury was due to the failure of the defendant to provide a safe and suitable place in which plaintiff was required to work at the time he was injured; in other words, it is insisted that the step on the engine was carelessly and negligently constructed, and that this was the proximate cause of plaintiff's injury. While it is well settled that the master must exercise ordinary care in providing for the use of servants reasonably safe, sound, and suitable machinery and appliances, and also to use ordinary care to discover and repair defects, the master does not insure or guarantee that the machinery or appliances are in a safe and suitable condition, and where defects exist the master is not held to be guilty of negligence unless it appears that he knew, or by the exercise of ordinary care could have known, that such machinery and appliances had become defective and were in an unsafe condition. In other words, it must appear, in order to entitle the plaintiff to recover, that the master had either actual or constructive notice of the defect alleged to have caused the injury, and these facts must be established by legal evidence. Washington, etc., Railway Co. v. McDade, 135 U. S. 554, 10 Sup. Ct. 1044, 34 L. Ed. 235; Norfolk & Western Ry. Co. v. Reed, 167 Fed. 16, 92 C. C. A. 478; Virginia, etc., Wheel Co. v. Chalkley, 98 Va. 62, 34 S. E. 976.

[2] There are no facts or circumstances from which the jury could have inferred that the master had either actual or constructive notice of the alleged defective condition of the step. To entitle the plaintiff to recover, the burden is upon him to either show that defendant had actual or constructive notice.

In determining this point, it should be borne in mind that no witness testified that this step was defective before the accident occurred. Indeed, the first evidence we have of the existence of the alleged defective step is the testimony of the plaintiff, who says that he did not discover it until after he had been injured. From the nature of things, the respective engineers, firemen, and other employés who had from time to time had charge of this engine would have observed as glaring a defect as the one described by the plaintiff; therefore, if the step was defective in any respect, it appears that the defendant company could not have had either actual or constructive knowledge of the same prior to the time plaintiff was injured. It further appears that no one ever fell from the step or was injured in any way on account of its condition.

Counsel for plaintiff insists that the defective condition of the step was in plain view, and could have been seen even by casual observation, and, further, if the foreman had exercised even ordinary care as to the condition of the engine, he could have discovered the same. It appears from the testimony of plaintiff that the accident occurred when he was returning from the third trip to the point where he was working on the engine, and it further appears that he used this step each trip. If the defect was so obvious and easily discovered the plaintiff would undoubtedly have observed it, but, as we have stated, he testified positively that he never discovered that anything was wrong

with the step until after he had fallen to the ground, and then observed it.

[3] The plaintiff in rebuttal, among other things, testified that Bondurant, the foreman, told him that he had previously fallen off of the same step, injuring his leg in the same way. The foreman testified positively that he never knew anything about the defect, and that he never told plaintiff that he had fallen from the engine on account of the defective condition of the step and injured his leg. Plaintiff also introduced a witness by the name of Cook, in rebuttal, who testified that Bondurant had told him that he had fallen off of the same step and injured his leg prior to the time plaintiff sustained his injury. The testimony of this witness was introduced for the purpose of contradicting the foreman, who had been asked on cross-examination if he had not been injured prior to the time the plaintiff was hurt by slipping from the engine on account of the defective condition of the step. This testimony could only be considered for the purpose of contradicting and discrediting Bondurant as a witness, and was in no sense substantive evidence from which it could be inferred that the step was in a defective condition anterior to the time of the accident in question. This rule is so well settled that we do not deem it necessary to cite any authority in support of the same.

[4] If, as contended by the plaintiff, the defective condition of the step was so patent as to be readily observed by every one, and it appearing as it does that the plaintiff before. he was injured made three trips, each time using this particular step, then he would be deemed to have assumed the risk incident to his employment; the rule being that if he knew, or by the exercise of ordinary care, could have known of the defective condition of the step, he would not be entitled to recover.

[5] The second question involves the point as to whether the plaintiff was entitled, as a matter of right, to take a voluntary nonsuit after the court had decided to direct a verdict for the defendant.

This court in the case of Parks v. Southern Railway Co., 143 Fed. 276, 74 C. C. A. 414, in discussing this phase of the question, says:

"At common law the action of the court upon a motion for a nonsuit was not a discretionary one, but the plaintiff, as of right, could at any time before verdict exercise this privilege; and this is now substantially the rule in North Carolina. But the more reasonable practice, certainly so far as the federal courts are concerned, is that the plaintiff has the right to take a nonsuit at any time before the case has been submitted to the judge or jury for determination. The plaintiff upon the making of a motion to instruct a verdict against him, that being one of the methods in the federal court of finally disposing of the cause, should then elect whether or not he will take a nonsuit, and not submit his cause upon a full hearing of that motion to the court, and take chances of an adverse decision thereon."

In view of what we have already said as respects this point, we do not deem it necessary to enter into a further discussion of the same, feeling as we do that the plaintiff was not taken by surprise, and that he was not deprived of introducing any newly discovered evidence before the case was submitted to the court for its final determination.

For the reasons stated, the judgment of the lower court is affirmed.