WATT JUSTICE, ADMINISTRATOR OF WAYNE JUSTICE, DECEASED, v. SOUTH-
ERN RAILWAY COMPANY, E. O. MOOSE, B. L. PUGH, W. E. WIN-
CHESTER, AND U. G. McGALLIARD.

(Filed 19 March, 1941.)

**1. Trial § 22b—**

Upon demurrer to the evidence, the evidence must be considered in the
light most favorable to plaintiff.  C. S., 567. .

**2. Railroads § 10—When there is no evidence as to how long intestate had
been prone on track when struck, doctrine of last clear chance is
inapplicable.**

Plaintiff's evidence tended to show that his intestate was prone on the
track when struck by defendant's train, that the accident occurred on a
clear day, that the place of the accident could have been seen 200 or 300
yards from the engine of the approaching train, and that the train could
have been stopped in 150 to 200 feet.  *Held:* In the absence of evidence
that intestate was prone on the track for a sufficient length of time for
him to have been seen by the engineer in time to have stopped the train
before striking him, the doctrine of last clear chance is inapplicable.

**3. Same—**

When from the evidence it is just as probable that intestate staggered
into the side of the moving train as it is that he was prone on the track
for a sufficient length of time for the engineer to have seen him and
stopped the train before striking him, plaintiff is not entitled to recover
on the doctrine of last clear chance, since the burden is on plaintiff to
do more than balance probabilities.

**4. Same—**

Testimony of a witness that about three minutes before the train came,
he looked down the track and did not see anyone on the track, that he
could have seen anyone standing on the track but, because of the grade,
could not have seen anyone prone on the track, is no evidence that intes-
tate was prone on the track at that time.

**5. Same—**

Expert testimony that intestate was prone on the track at the time he
was struck by defendant's train is no evidence that intestate was prone
on the track for a sufficient length of time before he was struck for the
engineer to have seen him and stopped the train before striking him.

DEVIN, J., dissenting.

CLARKSON and SEAWELL, JJ., concur in dissent.

APPEAL by defendants from *Nettles, J.,* at December Term, 1940, of
BUNCOMBE.

This is an action against the Southern Railway Company and its
employees for the wrongful death of the plaintiff's intestate alleged to
have been caused by the negligent failure of the defendants to avail
themselves of the last clear chance to avoid running a train over and

fatally injuring the plaintiff's intestate while down helpless on the track of the defendant company. The action was instituted in the general county court of Buncombe County and there tried upon the issues of negligence, contributory negligence, last clear chance, and damage. All of the issues, except the second relating to contributory negligence, were answered in favor of the plaintiff, and from judgment predicated upon the verdict, the defendants appealed to the Superior Court of Buncombe County. In the Superior Court all of the assignments of error brought forward by the appellants were overruled and judgment was entered affirming the judgment of the county court. From this judgment the defendants appealed to the Supreme Court, assigning errors.

*W. W. Candler and Harkins, Van Winkle & Walton for plaintiff, appellee.*

*W. T. Joyner and Jones, Ward & Jones for defendants, appellants.*

SCHENCK, J. The appellants assign as error the refusal of the trial court to allow their motion for judgment as in case of nonsuit lodged when the plaintiff had introduced his evidence and rested his case, and renewed when all of the evidence was in. C. S., 567.

When viewed in the light most favorable to the plaintiff, as it must be upon a demurrer thereto, the evidence tends to show that the plaintiff's intestate, while drunk, was upon the track of the defendant company about 2½ miles east of Canton, and that the company's freight train, operated by the individual defendants, while going in a westerly direction from Asheville to Canton, ran over the plaintiff's intestate, thereby severing his right hand and crushing his left elbow, from which wounds he died; that the intestate "was lying with one elbow and hand on the track when the train came along"; that the track east of the place where the intestate was run over is practically straight for some distance and is down grade, that the train of the defendant company was composed of two engines and 37 cars, some loaded and some unloaded, and was running between 20 and 30 miles per hour and could have been stopped in 150 to 200 feet; that the place where the intestate was run over could be seen from down the track east 200 or 300 yards; that the train did not slow up or stop; that neither of the engineers nor other employees of the defendant company saw the intestate on the track.

While there is evidence that the intestate "was lying with one elbow and hand on the track when the train came along," the evidence is silent as to how long the intestate had been in this position when he was run over. In fact, the appellee in his brief states, in reference to the testimony of Dr. Rich, by whom it was sought to show the position of the intestate when run over by the train, that "we point again to the fact

that Dr. Rich did not undertake, in any part of his testimony or in any answer on direct or cross-examination, to say when or how long the deceased had been upon the track before the train which injured him came along."

Although there is evidence tending to show that if he had been down on the track a sufficient length of time the intestate could have been seen from the engine soon enough to have stopped the train and avoided running over him, there is no evidence as to how long he had been in that position. When last seen by anyone the intestate was to the side of the track some 8 or 10 feet, in a drunken condition. It is just as reasonable and just as probable that the intestate staggered into the side of the moving train as it came by him, as it is that he was prone and apparently helpless on the track before the train reached him; and the burden is upon the plaintiff to do something more than balance probabilities.

As was said by *Winborne, J.,* in *Mercer v. Powell,* 218 N. C., 642, in the most recent utterance of this Court upon the doctrine of the last clear chance when sought to be applied in cases of this kind: ". . . the burden is upon the plaintiff to show by proper evidence: (1) That at the time the injured party was struck by a train of defendant he was down, or in an apparently helpless condition on the track; (2) that the engineer saw, or, by the exercise of ordinary care in keeping a proper lookout could have seen the injured party in such condition in time to have stopped the train before striking him; and (3) that the engineer failed to exercise such care, as the proximate result of which the injury occurred. *Upton v. R. R., supra* (128 N. C., 173, 38 S. E., 736); *Clegg v. R. R., supra* (132 N. C., 272, 43 S. E., 826); *Henderson v. R. R.,* 159 N. C., 581, 75 S. E., 1092; *Smith v. R. R.,* 162 N. C., 30, 77 S. E., 966; *Davis v. R. R.,* 187 N. C., 147, 120 S. E., 827; *George v. R. R.,* 215 N. C., 773, 3 S. E. (2d), 286; *Cummings v. R. R., supra* (217 N. C., 127, 6 S. E. [2d], 837.)" See, also, *Owens v. So. Ry. Co.,* 33 Fed. R. (2d), 870.

Since there is no evidence as to how long the intestate was prone upon the track, the jury could not have found that the engineer saw, or by the exercise of ordinary care could have seen him in such position and condition in time to have stopped the train before striking him.

The testimony of Lawton Johnson, corroborated by other evidence, to the effect that he was crossing the track about 50 yards west of the place where the intestate was run over as the train approached from the east, about three minutes before the train came, about 2½ miles ahead of the train, that he looked east down the track and saw no one standing on the track, that he could have seen a person standing on the track at this place, but he could not have seen a person lying down on the track at this place, is no evidence that the intestate was there prone upon the

---

JUSTICE *v.* R. R.

---

track at that time. It is conceded that the intestate was prone upon the track when run over, but as to when he became prone upon the track the evidence is silent.

While we have considered the expert opinion given in answer to a hypothetical question by Dr. Rich to the effect that the intestate was lying down on the track when the train came along we do not decide the question raised by an exception to its competency. We simply hold that even if it be conceded, without deciding, that such evidence is competent as has been held relative to expert opinion testimony based upon personal examination of the body and wounds thereon, *McManus v. R. R.,* 174 N. C., 735, 94 S. E., 455, there is no evidence of the fact essential to cases of this nature that the deceased was down or apparently helpless on the track long enough to have been seen by an engineer or other train operative soon enough to have stopped the train in time to have avoided running over him.

Entertaining, as we do, the opinion expressed relative to the demurrer to the evidence, it becomes supererogatory to discuss the other interesting questions presented by the able briefs filed in this case.

The judgment of the Superior Court is
Reversed.

DEVIN, J., dissenting: The evidence in this case shows that at the time of the injury the plaintiff's intestate was lying face down beside the railroad track, his body perpendicular to the rail, with his left elbow and right hand extended beyond his head and resting on top of the rail. In this position his hand and arm were crushed under the wheels of the train. This much is conceded.

But it is held that the trial judge should have allowed defendant's motion for judgment of nonsuit, on the ground that there was no evidence that deceased had been in that position long enough for the defendant's employees to have observed him and stopped the train before striking him. With due deference to the views of the majority, I venture the opinion, however, that the evidence does warrant the reasonable inference that he had lain there long enough for the train crew to have seen him and avoided the injury, if a proper lookout had been maintained. Let us analyze the testimony bearing on this point, in the light most favorable for the plaintiff.

The injury occurred at a point where the railroad track, between Asheville and Canton, passes through a cut spanned by an overhead bridge. The general direction of the railroad is east and west. The injury occurred on the south rail of the track. The same train and crew, on the day of the injury, passed this point twice before the plaintiff's intestate was struck. It was on the third trip that the injury

occurred. The train—a freight, with two engines—first passed this point going from Asheville to Canton at 11:15, and then from Canton to Asheville at 12:15, and on a third trip, going west from Asheville to Canton, at 3:15. This was the time of the injury. The day was clear. The evidence shows the deceased was very drunk that day. He was not only nearly insensible from his potations, but he had an unfinished bottle with him. He lay down in the cut on the base or mud sill of the overhead bridge, 6 to 10 feet from the railroad track. Members of the train crew saw him there at 11:15 when the train first passed, and again at 12:15 on the return trip to Asheville, still lying in a drunken stupor. On the third trip, a member of the crew, the fireman on the front engine, testified he looked at the same place where he had seen him before, on the sill, but he was not there. He did not see him at all. He said, "If there was anybody on the track I didn't see him." But admittedly the deceased was lying beside the track with his arm and hand on the rail, for he was struck in that position by that very train. How long had he been in that position?

It is in evidence that at 3:00 p.m., 15 minutes before the train reached this point, two witnesses passed through the cut on the railroad track and saw the deceased on the sill. At that time he was trying to sit up, but was too drunk to do so, was bent over, swaying from side to side, "like he was trying to sit up and couldn't," mumbling incoherently. These two witnesses passed on. Later another witness, named Johnson, crossed the railroad track in an automobile at a point 100 yards west of the bridge. At this time the smoke of the train coming from the east was visible. The track in approaching the place of injury was nearly straight for a quarter of a mile. This witness, Johnson, stopped at the crossing, looked east through the cut under the bridge, and saw no one. From his position he could see through the cut and 200 yards beyond, but due to the grade, he could not see down on the ground at the point of injury. He could see the ends of the crossties at that point (on the north), but not the ground on the south side of the rail. If the deceased had been erect, the witness could and would have seen him; if down on the ground on that side of the track, he was below witness' line of vision. The train was then a mile away, running 20 miles an hour. This was three minutes before the injury. It seems reasonably clear that at that time deceased was down on the ground or Johnson would have seen him; he was helpless, too drunk to sit up.

Another witness, Westmoreland, corroborated Johnson. He testified that he had noted the place of injury indicated by blood and pieces of bone, and that standing at the point where Johnson crossed the railroad at the west end of the cut "I could have seen a man if he had been standing up. I could have seen, I think, about a foot or 18 inches at that point. But you couldn't see him if he was lying down."

JUSTICE *v.* R. R.

The evidence thus places deceased at 3:00 p.m. trying to sit on the sill, bent over, drunkenly swaying, six feet from the track—about the length of his body and extended arm from the rail on which he was struck—with the train 15 minutes away, running 20 miles an hour. The deceased was incapable of sitting erect or standing; obviously the limit of his mobility was to fall to the ground. Now, according to witness Johnson, when the train was a mile away—three minutes before it arrived—the deceased was down on the ground, else Johnson would have seen him. As the train approached, the train crew could see the point of accident from a distance of 200 to 300 yards. The fireman on the left side of the front engine, on same side as deceased, looked at the sill where he had previously seen the deceased and he was not there. He said, "As we approached the overhead bridge there was no person or *obstruction* under the bridge or about the bridge"—that is no motion—nothing to meet the eye of one looking in that direction. This evidence shows that the deceased was neither standing, walking nor sitting erect. Witness did not see him, but he was there. If he had looked on the ground beside the rail, he could have seen him on or dangerously near the rail, helpless. He could have seen him from a distance of 200 yards. The train, a heavy freight going slowly upgrade, could have been stopped in 50 yards. True, the witness said he did not see him on the track, but he qualified that by saying, "If there was anybody on the track, I did not see him." Less than half a minute after the fireman looked for the man on the sill and saw nothing, the deceased's arm and hand on the rail were crushed under the wheels of the train. At the point where the blood showed deceased was struck, the scuffed-up ground extended back some five feet, showing where the deceased had lain. As the rear end of the freight train passed this point a few moments after the injury, the conductor and brakeman saw deceased sitting in "crumpled over position" four or five feet from the track, head on chest. Even the pain and shock of his injury were not sufficient to rouse him fully from his stupor.

This is an analysis of the testimony of the witnesses and of the inferences necessarily to be drawn therefrom. It is the established rule in this jurisdiction that on a motion to nonsuit "the plaintiff must be given the benefit of every fact and inference of fact pertaining to the issues involved, which may reasonably be deduced from the evidence." *Stacy, C. J.,* in *Cole v. R. R.,* 211 N. C., 591, 191 S. E., 353.

Applying this rule, the conclusion seems to my mind inescapable that the deceased was lying in the position in which he was struck when the approaching train came near enough for the crew to have seen him. If they, or any of them, had looked with proper care, they could have seen him, and the train could have been stopped according to the evidence in

two or three car lengths—less than fifty yards. The jury heard all the evidence, and, under a correct charge from the trial judge, came to the conclusion that the plaintiff's intestate was lying down on or dangerously near the railroad track, in an apparently helpless condition, and that the defendants operating the train, in the exercise of due care, could and should have seen him in time to have stopped the train and avoided the injury.

I think there was evidence enough to carry the case to the jury on all the elements necessary to invoke the application of the doctrine of last clear chance, and that the verdict and judgment should be upheld.

This case is stronger for the plaintiff than the similar case of *Hill v. R. R.,* 169 N. C., 740, 86 S. E., 609, where the evidence was held sufficient to go to the jury. The facts here are substantially different from those in the *Mercer case,* and I do not think that that case should be held controlling.

CLARKSON and SEAWELL, JJ., concur in this opinion.