CHARLES HENDERSON, Administrator, v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 16 October, 1912.)

**1. Nonsuit—Circumstantial Evidence—Province of Courts.**

Upon competent circumstantial evidence, when sufficient to raise more than "a possibility or conjecture" of the fact sought to be proved, it is the duty of the court, upon a motion to nonsuit, to give the evidence the interpretation most favorable to the plaintiff; and the court will not weigh the evidence to see if it is satisfying of the ultimate fact sought to be proved or say which theory arising therefrom should be adopted.

2. Railroads—Negligence—Helpless on Track—Burden of Proof—Requisites.

In his action to recover damages of a railroad company, for the negligent killing of his intestate, upon evidence tending to show that he was down and helpless upon the track at the time, the plaintiff must prove: (1) that the deceased was down on the track in an apparently helpless condition; (2) that the engineer could have discovered him in time to have stopped the train before reaching him, by the exercise of ordinary care; (3) that he failed to exercise such care, and as a direct result the deceased was killed.

3. Same—Evidence.

In this action against a railroad company for damages for the negligent killing of plaintiff's intestate, evidence held sufficient which tended to show that about two hours before he was killed he was asleep in a path near the cross-ties of defendant's railroad; that he was wakened and went to a near-by store; remained there a while; went back to the crossing and walked, while drunk and staggering, up the track in the direction where his body was found about two hours afterwards, at a distance of about two miles from the crossing, his head severed and on one side of the track, with his body on the other; that the train gave no signs or warning of its approach, under such conditions as would render the deceased observable to the engineer in time to have stopped his engine and have avoided the injury.

4. Railroads — Negligence—Helpless on Track—Statements—Coroner—Evidence.

In this action against a railroad company for the alleged negligent killing of plaintiff's intestate while he was down on the track in a helpless condition, a statement of the engineer, taken before the coroner, that he saw a man lying on his left side with his hat on his head, so he could not tell whether he was white or black, was properly excluded.

APPEAL by plaintiff from *Carter, J.,* at July Term, 1912, of ONSLOW.

This is an action to recover damages for the alleged negligent killing of the intestate of the plaintiff.

The defendant denied negligence, and alleged that the death of the intestate was caused by his own contributory negligence.

At the conclusion of the evidence for the plaintiff his Honor rendered a judgment of nonsuit, and the plaintiff excepted and appealed.

*D. E. Henderson and D. L. Ward for plaintiff.*
*Frank Thompson and Moore & Dunn for defendant.*

ALLEN, J. The only question presented by this appeal is whether there is any evidence fit to be submitted to the jury, and in considering it we cannot weigh the evidence for the purpose of seeing if it satisfies us of the ultimate fact sought to be proved, nor can we exercise the power, committed by law to the jury, of saying which theory arising upon the evidence shall be adopted.

Our duty is performed when we determine whether there is any evidence worthy of consideration, and in its performance we are not permitted to accept a view of the evidence favorable to the defendant, as a jury would have the right to do, if one is presented which sustains the contention of the plaintiff, the law requiring us, on a motion to nonsuit, to give to the evidence the interpretation most favorable to the plaintiff.

If, so considered, the evidence does no more than "raise a possibility or conjecture of a fact," a judgment of nonsuit ought to be sustained (*Cobb v. Fogalman,* 23 N. C., 440; *Lewis v. Steamship Co.,* 132 N. C., 909), but if the "more reasonable probability" is in favor of the plaintiff's contention, the question ought to be submitted to the jury. *Fitzgerald v. R. R.,* 141 N. C., 535.

The statement of the law in this last case is pertinent. "It is very generally held that direct evidence of negligence is not required, but the same may be inferred from facts and attendant circumstances; and it is well established that if the facts proved establish the more reasonable probability that the defendant has been guilty of actionable negligence, the case cannot be withdrawn from the jury, though the possibility of accident may arise on the evidence. Thus in Shearman and Redfield on Negligence, sec. 58, it is said: 'The plaintiff is not bound to prove more than enough to raise a fair presumption of negligence on the part of the defendant and of resulting injury to himself. Having done this, he is entitled to recover unless the defendant produces evidence to rebut the presumption. It has sometimes been held not sufficient for the plain-

tiff to establish a probability of the defendant's default; but this is going too far. If the facts proved render it probable that the defendant violated its duty, it is for the jury to decide whether it did so or not. To hold otherwise would be to deny the value of circumstantial evidence. As already stated, the plaintiff is not required to prove his case beyond a reasonable doubt, though the facts shown must be more consistent with the negligence of the defendant than the absence of it. It has never been suggested that evidence of negligence should be direct and positive. In the nature of the case, the plaintiff must labor under difficulties in proving the fact of negligence, and as that fact is always a relative one, it is susceptible of proof by evidence of circumstances bearing more or less directly on the fact of negligence; a kind of evidence which might not be satisfactory in other classes of cases open to clear proof. This is on the general principle of the law of evidence which holds that to be sufficient and satisfactory evidence which satisfies an unprejudiced mind.' "

The allegation of negligence in the complaint is that the deceased was down on the track in an apparently helpless condition, and that the engineer of the defendant could have discovered him in time to stop the train before reaching him, by the exercise of ordinary care.

The burden was on the plaintiff to prove the truth of this allegation and to establish in the minds of the jury: (1) that the deceased was down on the track in an apparently helpless condition; (2) that the engineer could have discovered him in time to stop the train before reaching him, by the exercise of ordinary care; (3) that he failed to exercise such care, and as a direct result the deceased was killed. *Clegg v. R. R.,* 132 N. C., 294.

Applying these principles, we are of opinion that there was error in entering the judgment of nonsuit, and we forbear from discussing the evidence at length, for fear we may present arguments in behalf of the plaintiff, without giving those favorable to the defendant.

It was in evidence that about two hours before the deceased was killed, he was asleep in a path near the cross-ties; that he

was awakened and went to Sabiston's store near-by; that he remained at the store a short time, and went back to the railroad at Sabiston's crossing; that he was walking and went up the railroad in the direction his body was afterwards found; that he was drunk and staggering, one witness saying "both sides of the road was his"; that about two hours after leaving Sabiston's crossing, his body was found near a trestle of the defendant, across Cary's branch, which was about two miles from the crossing; that the head was severed from the body and was on one side of the track, and the body, according to one witness, on the other side, and according to another, between the rails, and an arm under the trestle; that the body was mangled, or, as one witness expressed it, "badly chewed up," "badly mashed up"; that there was evidence of blood on the rail, a witness testifying:

Q. Did you see any blood, and where did you see it?  A. That was on the north side of the trestle, and a bundle on this side—a bundle of overalls.

Q. What did you see on the roadbed?  A. I didn't see anything unusual except where the man was cut to pieces on the trestle.

Q. Where was that?  A. On the northeast side of the trestle.

Q. Right on the side of it?  A. You may say the first tie— right on the roadbed between the first and second tie.

Q. With reference to the T iron, where was it?  A. It must have been right over the T iron on the east side.

Q. How far did you see the evidence on the track from where you first observed the condition?  A. Over there south, it was about half a dozen or eight ties as far as it was.  He was cut right alongside of the trestle after we crossed.

Q. Where was the head?  A. When I first observed the head it was down in the ditch.

Q. How far was that from the other edge of the trestle?  A. The head was north side of the trestle, eight or ten cross-ties from the trestle.

Q. Where was the body?  A. Right on the other side, just clear of the T iron.

---

---

Q. With reference to the railroad track? A. Right side of the track, just clear of the track on the edge of the cross-ties, on this end.

Q. (The Court:) Was any part of the body between the rails or outside the rails? A. To the best of my recollection, the head was on one side of the railroad in the ditch and the body was on the other side of the track, and the arm was down under the trestle. I believe the other arm was badly mangled; that the deceased was killed by a passenger train, which stopped a short distance beyond the body; that no whistle was sounded; that it was a clear day; that an object down on the track, about the place the defendant was killed, the size of a man could be seen from the direction the train was running 1,065 yards, and that it was a man, if one was on the track, a distance of 265 yards.

There is other evidence tending to establish the contention of the defendant.

His Honor properly excluded the statement of the engineer, made before the coroner, that he saw a man lying on his left side with his hat on his head, so he could not tell whether he was white or black. *Southerland v. R. R.*, 106 N. C., 100.

We are of opinion the plaintiff is entitled to have the evidence considered by a jury.

Reversed.