MOSES L. SMITH, Administrator, v. SALISBURY AND SPENCER RAILWAY COMPANY.

(Filed 16 April, 1913.)

1. Electric Railways — "Practical Fenders"—Negligence—Evidence —Questions for Jury.

The failure of an electric railway company to furnish its car with "practical fenders" to prevent injuries to those using the track, as required by Revisal, secs. 2616, 3801, is some evidence of negligence in an action to recover damages for personal injury inflicted by one of them in a collision with a pedestrian, and actionable when it is the proximate cause of the injury.

SMITH *v.* R. R.

**2. Appeal and Error—Instructions—Presumptions.**

Where the charge of the trial judge to the jury is not set out in the record on appeal to the Supreme Court, it will be presumed to have been correctly given.

**3. Evidence—"Scintilla"—Nonsuit.**

Where there is more than a scintilla of evidence, and such as rises above the plane of mere conjecture, and is sufficient to prove the essential facts making for the plaintiff's contention in his action, a judgment for nonsuit should be refused.

**4. Electric Railways—Outlook—Ordinary Care—Negligence.**

It is the duty of a motorman on a moving electric railway car to keep a careful, constant, and continuous outlook for persons or obstructions on the track, such as is reasonable and practicable, and required in the observance of ordinary care.

**5. Same—Persons on Track—Last Clear Chance—Nonsuit.**

The defendant electric railway company being sued for damages for the negligent killing of plaintiff's intestate by one of its cars, while he was sitting, at night, on the defendant's track, his elbows on his knees and his head in his hands, introduced as a witness the motorman on the car, who testified that he was "looking forward" at the time, and failed to see the intestate, because the night was dark and foggy. There was evidence that the car was equipped with an electric headlight, that the track was straight and level where the killing occurred, that the deceased could have been seen at a distance of 400 feet, and that, at the speed the car was then going, it could have been stopped in about 35 feet: *Held*, the fact that the motorman was keeping a careful lookout, under the circumstances, was evidence that he saw the deceased in time to have stopped the car and avoided the injury; and a motion for a judgment of nonsuit on the evidence should not be granted, there being more than a scintilla of evidence that the defendant was negligent upon the issue of the last clear chance.

**6. Electric Railways—Persons on Track—Insensibility to Danger—Evidence—Negligence.**

Where the motorman on an electric car sees a person sitting on the track, at night, in the light of the electric headlight, with which the car is equipped, the person leaning over, with his hand resting on his knees, totally inattentive to the coming car and heedless of the ringing of the gong, which was constantly being sounded, it is sufficient evidence for the jury to consider upon the question of whether the person thus sitting was asleep, or otherwise rendered unconscious of the danger.

**7. Same—Trespasser—Contributory Negligence—Ordinary Care.**

The mere fact that a person on an electric railway right of way is a trespasser and has placed himself on the track in a dangerous position, of which he is apparently insensible, does not relieve the company of its duty to avoid running over him with its car, if this can be done by the exercise of ordinary care in the use of the means at the motorman's command, after he should have observed the danger to the pedestrian.

**8. Same—Definition of Ordinary Care.**

In the exercise and enjoyment of its franchise, an electric railway company is bound to recognize the rights of others, and the ordinary care required of them is to be measured in each case by the apparent situation, and the dangers incident to their exercise of the privilege of prosecuting their business.

**9. Electric Railways—Persons on Track—Apparent Insensibility to Danger—Presumptions.**

Where a person is seen by the motorman down on defendant electric company's track, in a dangerous position, of which he is apparently unaware, in front of a running car, the motorman cannot assume that he will leave the track before the car overtakes him, and, free from negligence, continue to run the car until it is too late to avoid an injury.

APPEAL by defendant from *Cooke, J.,* at November Term, 1912, of ROWAN.

This action was brought to recover damages for the negligent killing of plaintiff's intestate, Cicero L. Wyatt. The defendant's car was proceeding north on its way from Salisbury to Spencer, running at the rate of about 12 to 15 miles an hour. The intestate had been seen walking from Spencer to Salisbury, and when struck by the car was sitting on the west side of the track, with his elbows resting on his knees and "bent over to conform to that position." There was evidence on the part of the plaintiff that the night was dark, but not foggy, and that the intestate could have been seen for 300 or 400 feet, and he was actually seen by the witness Austin at a distance of about 400 feet. The intestate's son, who was on the car in search of his father, saw the motorman talking to Mr. Caddell, who was on the front platform, a few seconds before the car struck Wyatt. There was an electric headlight on the car. The track was nearly level for about 150 feet on the south side of the place where Wyatt was sitting, and straight at that point for a

mile. The car could have been stopped in about a car's length, and it was stopped within that distance, 25 or 30 feet, that being a car's length. The body, when found, was lying 8 or 10 feet behind the car, between the rails. There was further evidence that the fender on the front of the car, a safety device, was defective, that is, too high and narrow, not properly equipped and out of date. On the other hand, there was evidence for defendant contradicting that of plaintiff. The motorman stated that he was not talking to Caddell, but keeping a proper lookout, and that it was dark and foggy, and for this reason he could not and did not see the man until he got within 30 or 35 feet of him, when he did all in his power to stop the car, applying the brakes and reversing the current, and it was not possible to stop the car sooner than he did. He had received a bell to stop at Carter's, a near-by station, and was "drifting at the rate of 15 miles, and sounding the gong," when he first saw Wyatt sitting on the track. He immediately tried to stop the car by the use of all available means. He said there was no indication to him that Wyatt was helpless or could not take care of himself at the time he first saw him and applied the brakes and reversed the current. The witnesses for both parties were corroborated. It was admitted that the defendant had a proper headlight on the car that night, and that the car was running at the usual speed.

The court submitted issues, which were answered as follows:

1. Was the plaintiff's intestate, said Cicero L. Wyatt, killed by the negligence of the defendant company, as alleged in the complaint? Answer: Yes.

2. Did the deceased, Cicero L. Wyatt, by his own negligence, contribute to his death? Answer: Yes (by consent).

3. Notwithstanding the negligence of plaintiff's intestate, could defendant, by the exercise of ordinary care, have avoided killing Cicero Wyatt? Answer: Yes.

4. What damage is plaintiff entitled to recover? Answer: $1,250.

The only question in the case was raised by the defendant's motion to nonsuit and his prayer for instruction, which was substantially, that there was no evidence of negligence, or, to

be more exact, that Wyatt was in a helpless condition or not in possession of his faculties, so that he could not see and hear, at the time he was sitting on the track, both of which were denied. Defendant duly excepted, and appealed from the judgment.

*Craige & Craige and Edwin C. Gregory for plaintiff.*
*Clement & Clement and Jerome & Price for defendant.*

WALKER, J., after stating the case: We may pretermit any extended reference to the evidence as to the defective condition of the fender, which would be sufficient, perhaps, to justify the ruling of the court by which the nonsuit and the instruction were refused. The statute, Acts 1901, ch. 743; Revisal, secs. 2616 and 3801, require that street railway companies shall furnish their cars with "practical fenders" to prevent injuries to those using their tracks. If the company did not comply with this provision, it was evidence of negligence, or a circumstance from which negligence could be inferred by the jury, and if the negligence was found by the jury and was the proximate cause of the intestate's death, it became actionable. *Henderson v. Traction Co.,* 132 N. C., 779. But we will not rest our decision upon any such ground, as we think there was other evidence of negligence, which was properly submitted to the jury and, we must presume, under correct instructions, as the charge is not in the record. *S. v. Dickerson,* 98 N. C., 708. We are not concerned with the weight of the evidence, as that is for the jury to consider. If it is construed in the light most favorable to the plaintiff, which is the rule, and there is, in that view, more than a scintilla of evidence, and such as rises above the plane of mere conjecture and is reasonably sufficient to prove the essential facts, it was proper to refuse the nonsuit, as such evidence carries the case to the jury. This Court has held that those operating trains and cars should keep a careful outlook for persons and obstructions on the track. *Arrowood's case,* 126 N. C., 629; *Pickett's case,* 117 N. C., 616; *Sawyer's case,* 145 N. C., 24. We need not decide exactly the measure of vigilance required of a motorman on a street car in this respect, whether it should be constant and continuous, but it should be such as is reasonable and practicable, under the cir-

cumstances, and required by the duty to exercise ordinary care. In this case, the motorman said that he was "looking forward" as the car was approaching the place where Wyatt was sitting on the cross-tie, and he failed to see him in time to stop the car before he was reached, because the night was dark and foggy. The jury might well infer from this statement that the motorman saw Wyatt's situation in time to stop the car, when it is considered in connection with the other evidence that the track, which was laid upon the side of the public highway, was level for 150 feet and straight for a mile, and that Wyatt could be seen about 400 feet, with the headlight burning; so it cannot be said that there was no evidence of the motorman's ability to see Wyatt if he was looking ahead, and he testified that he was keeping a lookout and attending strictly to his business, instead of talking to Caddell. The fact that he looked and could see Wyatt is some evidence that he did see him. If he saw him the length of two cars, or say 70 feet, before Wyatt was struck, he could have stopped the car and avoided the injury.

Passing to the next point, there was evidence from which the jury could well have found that Wyatt was sitting in such a posture that any reasonably prudent man would at least *suspect* that he was asleep. There is no evidence that he was drunk, or even that he had been drinking, but he was bent over and evidently resting his head on his hands, as his elbows were upon his knees and he was "leaning forward to conform to that position," said the witness Caddell. There was evidence from which it might reasonably have been argued that he was asleep, and if not so, or otherwise insensible, he would have heard the sound of the gong and left the track. The motorman evidently thought that there was danger of injuring him, as he applied the brakes and reversed the current, he testified, as soon as he saw him. These energetic measures to which he resorted indicated his belief that Wyatt was unaware of his perilous situation or the approach of the car; but he was too late. If he looked and he saw him, and his situation was such as to produce the impression that he was oblivious to his surroundings, or if he was talking to Caddell and failed to look, he was negligent. *Edge v. R. R.,* 153 N. C., 212.

The Court said in a case somewhat like this in its facts:
"We do not think that, as a principle of law, it can be stated
that where a trespasser is seen sitting upon the track, with his
head in his hands and his hands resting on his knees, appar-
ently asleep or unconscious, the presumption is that he will hear
and obey the signals of the engineer warning him of the ap-
proach of the train. This undoubtedly would be true if the
trespasser were walking or standing on the track. In that case
the very fact that he was moving or standing up would indicate
that he was not asleep or unconscious, but had possession of
his faculties, and the engineer would have the right to suppose
that he would hear and obey the danger signals. But the same
rule would not necessarily prevail where the situation is as de-
tailed in this case. A man sitting on a cross-tie of a railroad
track, apparently asleep or unconscious, presents an unusual,
not to say extraordinary, spectacle, and we think it was the
province of the jury to determine whether or not an 'engineer
of ordinary prudence, seeing a man so situated, ought not to
commence checking the train in time to prevent injuring him
if it should transpire that he was unconscious or asleep." *Star-
ett v. R. R.,* 110 S. W. Rep. (Ky.), 283. It is true, the jury
found that Wyatt was negligent, but even a trespasser on the
track, situated as he was at the time of the catastrophe, does
not forfeit his life or limb if, after his discovery or by the exer-
cise of proper care, his dangerous position can be seen and
realized and the consequent injury to him avoided. He was
not committing any offense, but simply placed himself in a
place of danger. It may be admitted that he had no right to
use the track in that way, but the defendant had no right to
kill him because he did. If the jury had found that the motor-
man was in the exercise of due care, the defendant would have
been relieved from responsibility for his death; but unfortu-
nately for the defendant, they did not take that view of the
facts, but by their verdict have said that his life could have
been saved by the exercise of ordinary care in the use of the
means at the motorman's command, making out a case of
actionable negligence. *Hovins v. R. R.,* 107 N. W. Rep., 214.
In the enjoyment and exercise of its franchise, the defendant

is bound to recognize the rights of others. At common law, it is required to exercise ordinary care, to be measured in each case by the apparent situation and the dangers naturally incident to the prosecution of its business. If a person be seen upon the track, who is apparently capable of taking care of himself, the motorman may assume that he will leave the track before the car overtakes him, but he cannot act upon that presumption with respect to a person who is apparently insensible of his danger from sleepiness, drunkenness, or any other like cause. *Sibley v. Ratliffe,* 50 Ark., 477. In *Henderson v. R. R.,* 159 N. C., 581, it was said by *Justice Allen:* "The allegation of negligence in the complaint is that the deceased was down on the track in an apparently helpless condition, and that the engineer of the defendant could have discovered him in time to stop the train before reaching him, by the exercise of ordinary care. The burden was on the plaintiff to prove the truth of this allegation and to establish in the minds of the jury: (1) that the deceased was down on the track in an apparently helpless condition; (2) that the engineer could have discovered him in time to stop the train before reaching him, by the exercise of ordinary care; (3) that he failed to exercise such care, and as a direct result the deceased was killed," citing *Clegg v. R. R.,* 132 N. C., 294, which is in point. We add *Clegg v. R. R.,* on rehearing, 133 N. C., 303; *Upton v. R. R.,* 128 N. C., 173; *Guilford v. R. R.,* 154 N. C., 607. After a careful review of the facts, we are constrained to hold that there was some evidence of actionable negligence, and the motion and prayer of the defendant were both properly refused.

We have not discussed the relative and reciprocal rights of the street car company and the public in the use of the railway and the street or public road on which it was laid (*Moore v. Street Railway Co.,* 128 N. C., 455), as the jury found that Wyatt was a trespasser and guilty of contributory negligence, not being at the time in the exercise of a right incident to the customary use of the street or road, such as crossing it, either at a crossing or between the crossings. That question, therefore, is not now before us.

No error.