WILLIAM M. GEORGE, ADMINISTRATOR OF W. EDWARD GEORGE, v. WINSTON-SALEM SOUTHBOUND RAILWAY COMPANY.

(Filed 16 June, 1939.)

**1. Evidence § 47—**

A physician qualified as an expert may testify from his examination of the wounds of deceased that deceased was lying prone upon the track at the time he was struck and killed by defendant's train.

**2. Railroads § 10—Evidence held for jury on question of defendant's negligence in failing to stop train before striking intestate lying in a helpless condition on the track.**

The evidence tended to show that intestate was struck and killed by defendant's train on a fair, clear night, that the track along which the train approached deceased was straight and unobstructed for a distance of three-quarters of a mile, and that the train could have been stopped within 300 or 400 feet. The engineer testified that he did not see intestate. There was medical expert testimony that at the time intestate was injured he was lying prone on the tracks. *Held:* The expert testimony is sufficient to present for the jury's determination whether the intestate was lying on the tracks in an apparently helpless condition, and the evidence as to the conditions at the scene of the accident and the engineer's failure to see deceased is sufficient to present for the jury's determination whether the engineer, by the exercise of ordinary care, could have discovered intestate in time to have stopped the train before hitting intestate, and whether he failed to exercise such care, and whether such negligent failure caused the death of deceased, and the granting of defendant's motion to nonsuit was error.

BARNHILL, J., dissenting.

STACY, C. J., and WINBORNE, J., concur in dissent.

APPEAL by plaintiff from *Sink, J.,* at February Term, 1939, of DAVIDSON. Reversed.

*Willis & Seawell for plaintiff, appellant.*
*Craige & Craige and Phillips & Bower for defendant, appellee.*

SCHENCK, J. This is an action for the wrongful death of the plaintiff's intestate alleged to have been caused by the negligent failure of the defendant to avail itself of the last clear chance to avoid running its train over and fatally injuring the plaintiff's intestate while on the track of the defendant. At the close of the plaintiff's evidence the defendant's motion for judgment as in case of nonsuit was allowed, and from judgment accordant with the court's ruling the plaintiff appealed, assigning as error such ruling and judgment.

The evidence, when viewed in the light most favorable to the plaintiff, tended to show that about 1:55 a.m., on 18 July, 1938, the plaintiff's intestate, Edward George, was "lying down upon the tracks" of the defendant, and was run over by the train of the defendant moving in a southern direction, and the track of the defendant was straight, practically level and unobstructed from the place where the intestate was lying in a northern direction for approximately 1,500 yards, or three-fourths of a mile; the night was clear and fair; the train was travelling approximately 30 miles per hour and carried 25 cars; the headlight and brakes of the train were in proper order and the train could have been stopped within 300 or 400 feet; that the engineer did not see anybody on the track, but about 5:25 o'clock of the same morning he found particles of flesh on the "left back drive of the brake head of the engine."

Defendant's first contention that the evidence of the plaintiff tending to show that the intestate was lying down upon the track was incompetent, cannot be sustained. The evidence consisted of the testimony of Dr. J. R. Terry, the coroner, whom the court held to be a medical expert, and was to the effect that he went to the scene before the body of the intestate had been removed, and judging "from the nature, the condition and position of the wounds," he had an opinion satisfactory to himself that "the deceased was lying down upon the tracks at the time the same were inflicted." This evidence was competent under the authority of *McManus v. R. R.,* 174 N. C., 735, where *Hoke, J.,* says: "It was also urged for error that Dr. McCoy, a witness for plaintiff, who had made a professional examination of the intestate at the time, was allowed, over defendant's objection, to testify that, 'from the nature, condition and position of the wounds, he was of opinion that the intestate was lying down at the time the same was inflicted.' It will be noted that this witness, admitted to be an expert, spoke from a professional and personal examination of the intestate, and the answer, to our minds, was clearly within the domain of expert opinion. Both question and answer are approved and upheld, we think, in *Ferebee v. R. R.,* 167 N. C., 290; *Parrish v. R. R.,* 146 N. C., 125; *S. v. Jones,* 68 N. C., 443."

In *Henderson v. R. R.,* 159 N. C., 581, where the allegations were similar to those of the instant case, *Allen, J.,* says: "The allegation of negligence in the complaint is that the deceased was down on the track in an apparently helpless condition, and that the engineer of the defendant could have discovered him in time to stop the train before reaching him, by the exercise of ordinary care. The burden was on the plaintiff to prove the truth of this allegation and to establish in the minds of the jury: (1) that the deceased was down on the track in an apparently helpless condition; (2) that the engineer could have discovered him in time to stop the train before reaching him, by the exercise of ordinary care; (3) that he failed to exercise such care, and as a direct result the deceased was killed."

Applying this statement of the law to evidence in the instant case, we have (1) the testimony of Dr. Terry that in his opinion the deceased was lying down upon the track at the time the fatal wounds were inflicted. This was sufficient to be submitted to the jury upon the first requisite laid down by the court.

As to whether (2) the engineer could have discovered the deceased in time to stop the train before reaching him, by the exercise of ordinary care, we have the evidence that the track was straight, level and unobstructed for three-quarters of a mile in the direction from which the train approached the deceased, the night was clear and fair, the train was running 30 miles per hour, and the brakes and headlight were in proper condition and the train could have been stopped within 300 or 400 feet. This was sufficient evidence to be submitted to the jury upon the second requisite laid down by the court. In *Deans v. R. R.,* 107 N. C., 686 (696), *Avery, J.,* in speaking to a state of facts similar to those of the instant case, says: "The jury were at liberty to exercise their own common sense and to use the knowledge acquired by their observation and experience in everyday life in solving the question whether the engineer, in the exercise of due diligence, might have discovered, from his elevated position on the engine, the fact that plaintiff's intestate was lying helpless across the rail, and whether by prompt and strenuous effort he could have saved his life without putting his passengers in jeopardy. . . . Courts and juries acting within their respective provinces must take notice of matters of general knowledge and use their common sense where the evidence makes the issue of law or fact depend upon their exercise."

As to whether (3) the engineer failed to exercise ordinary care and as a result thereof the deceased was killed, we have the testimony of the engineer himself that he did not see the deceased, and all of the evidence tends to show that the engine struck, ran over and killed the deceased.

George *v.* R. R.

This was sufficient to carry the case to the jury upon the third requisite laid down by the court.

When we view the evidence in the light most favorable to the plaintiff, as we must do upon a motion to nonsuit, we are constrained to hold that his Honor erred in sustaining the demurrer to the evidence.

Reversed.

Barnhill, J., dissenting. The deceased lived in a shanty car parked on a siding on the east side of the track near Ella Station. There was a main track, sidetrack, and house track. The deceased was carried home by friends about 11:30 on the night of 17 July. He entered his shanty car sometime after 12:00 o'clock. The train, which it is not seriously denied struck him, passed that point about 1:55 a.m., 18 July. The next morning the mangled body of the deceased was found on the east side of the main track near the frog where the sidetrack and house track branch off from the main track. There was evidence that there was no sign on any part of the front part of the engine that it had struck a human being. The first signs found were on the brakehead approximately 35 feet back from the front of the cowcatcher. There were signs between the two main drivewheels and under the cab. The only evidence in the record that the deceased was prone on the track at any time is the evidence of the physician, who testified that in his opinion, from the nature, condition, and position of the wounds, the deceased was lying down upon the track *at the time* the same were inflicted; that the body was lying between the rails when it was found, and that: "I say that he was lying on the track on account of the wound. We do not know that someone did not throw him under the wheel. We do not know that he did not jump under the train." There was also evidence that the headlight on the train was in good condition and was on at the time; that the brakes on the train were likewise in good condition, and that the engineer and fireman were keeping a lookout and saw no one.

It is well established in this jurisdiction that negligence on the part of a railroad company is not presumed from the mere fact that the mangled body of a person is found on or near the track, or from the fact that a train struck a person on the track. *Harrison v. R. R.,* 204 N. C., 718, and cases there cited; *Upton v. R. R.,* 128 N. C., 173; *Clegg v. R. R.,* 132 N. C., 292. To establish negligence in a case of this type, plaintiff is required to prove: (1) That the deceased was down on the track in an apparently helpless condition; (2) that the engineer or fireman saw or, by the exercise of ordinary care in keeping a proper lookout, could have seen the deceased in such position a sufficient distance ahead to stop the train before injuring him; and (3) that the engineer

failed to exercise ordinary care in stopping his train and avoiding injury to the deceased who was at the time so situated, as a proximate result of which the deceased was killed. *Clegg v. R. R., supra; Henderson v. R. R.,* 159 N. C., 581.

In my opinion the evidence relied upon by the plaintiff is not sufficient to establish a *prima facie* case of negligence. That the deceased was prone on the track *at the time* he received the injuries does not prove, or tend to prove, that he was prone on the track at the time the train approached. As stated by the physician, we do not know whether he was thrown under the wheel or jumped or staggered into the train, or stepped in front of the train when it was so near that it was impossible for the train to be stopped. As to when he got on the track is left in the field of speculation. That his legs were cut off and one arm and his head were severed from the body would seem to indicate, circumstantially at least, that he was prone at the instant he received his wounds, but this could not be held for evidence that he was lying on the track in an apparently helpless condition not possessed of his faculties a sufficient distance ahead of the train so that the crew, by the exercise of reasonable care, could have seen him in time to stop the train and avoid the injury.

The evidence offered by the plaintiff tends strongly to show that this was not the fact. There was no sign on the front of the train. The first indication that the train had come in contact with a human being was at a point 30 or 35 feet back from the front. Furthermore, the plaintiff offered evidence tending to show that the engineer and fireman were keeping a lookout and did not see any object on the track ahead of the train.

The deceased retired to his shanty after 12:00 o'clock a.m. He was struck by a passing train about 1:55 a.m. When and why he left his shanty after retiring and just how and under what conditions he came in contact with the passing train is unsolved by this record. An explanation thereof can be arrived at only by speculation and surmise. There is no evidence tending to explain the same.

The record is devoid of any fact or circumstance tending to establish negligence on the part of the defendant. In my opinion the judgment dismissing the action as of nonsuit should be sustained.

STACY, C. J., and WINBORNE, J., concur in dissent.