**MIDDLETON v. NORFOLK & W. RY. CO. et al.**

**No. 5665.**

Circuit Court of Appeals, Fourth Circuit.

Jan. 31, 1948.

Fred S. Hutchins, of Winston-Salem, N. C. (Roy L. Deal, of Winston-Salem, N. C., on the brief), for appellant.

Kerr Craige Ramsay, of Winston-Salem, N. C. (W. W. Coxe, of Roanoke, Va., and Craige & Craige, of Winston-Salem, N. C., on the brief), for appellees.

Before PARKER, SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

■ Appeal is taken from the judgment of the District Court whereby the pending action was dismissed under Section 41(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, at the close of the plaintiff's case on the ground that the evidence failed to show that the plaintiff was entitled to recover. John C. Middleton, twenty-one years of age, was struck and killed by a train of the defendant Railway Company at 8:45 P.M. Eastern Daylight Saving Time, on August 31, 1945, on the railroad track at or near the crossing of a dirt road four miles from Walkertown, North Carolina. It was charged in the complaint and the administrator endeavored to show that although the deceased was negligent in being upon the track at the time, it was obvious to the men in charge of the train that he was in a perilous position and that the engineer in the exercise of due care could have realized the situation in time to stop the train and avoid the accident but negligently failed to do so. In short, the plaintiff invoked the doctrine of the last clear chance under the circumstances hereinafter set forth in the light most favorable to the plaintiff.

The railroad is single track in this vicinity and runs approximately north and south. Coming from the north it approaches the crossing at a slight down grade and in a straight line for approximately three-quarters of a mile. From this direction the crossing is visible at night in the rays of the engine's headlight from a distance of 1200 feet. A concrete public highway runs parallel to the railroad track at a short distance to the west and about 8 or 10 feet below the track level. The deceased lived east of the railroad track and 75 feet north of the crossing. He was a farm worker and had performed farm work during both the morning and afternoon of the day. He was tired from the day's exertion and declined to attend a wedding in the family that was to be held that evening. He was subject to attacks of epilepsy, but there was no evidence of a seizure on the day of his death. About a half hour before the train passed he was

seen sitting on the east rail of the track facing west about 30 feet north of the crossing with his feet between the ties, his elbows resting on his thighs and his head slightly tilted to one side. A motorist who was driving a passing truck going north on the paved road raised his fingers from the wheel in greeting to the deceased without response or motion from him; but the driver did not stop since the deceased did not seem to be in a helpless condition.

Within 30 minutes thereafter, the train, consisting of an engine, a tender and three passenger coaches, came on from the north at the speed of 50 miles per hour. The engineer took a look down the track at the top of the grade about 1200 feet from the crossing, and seeing nothing on the track, began to look for a railroad signal located south of the crossing and not easily visible to him on account of trees growing alongside of the track until the engine had reached a point quite near the crossing. The signal is visible more readily on the fireman's side of the engine and the fireman saw it and told the engineer that the signal was clear when the train had reached a point about 1200 feet from the crossing. When the engine reached a point about 250 or 300 feet from the crossing, the engineer noticed at the end of the cross ties on his left side of the track south of the crossing a low dark object as if a bundle had fallen from a passing truck. He did not think that it was a human being but he blew emergency signals and passed on. The engineer inquired whether the fireman had seen anything and the latter, who had been looking back at the fire box after registering the signal, caught a glimpse of something that looked like a piece of paper at the side of the track. The train could be stopped upon an emergency within a distance of 350 feet under the circumstances described.

The emergency signals were heard by three persons in the neighborhood, two of them being at a filling station 600 or 700 feet from the crossing, and a third at a dwelling 450 feet from the crossing. They looked toward the crossing because of the signal and caught a glimpse of some object near the crossing but could not determine what it was, and since the train passed on without stopping, they gave the matter no further thought. When the train made its first regular stop south of the crossing, the engineer and fireman noticed evidences of blood and flesh on the left front wheel of the engine as if a rabbit or dog had been struck, but made no report of the accident since they did not think that a human being had been struck by the engine. It was not until the next morning that the mangled body of the deceased was found beside the track 125 feet south of the crossing.

The appellant contends in this state of the evidence that since the deceased was seated upon the track in the manner described less than 30 minutes before the train passsed and killed him, the engineer must have failed to keep a careful lookout as he approached the crossing and that if he had done so, he would have seen the deceased in a dangerous position and would have realized that he was helpless in time to stop the train and avoid the catastrophe.

It has been repeatedly held by the Supreme Court of North Carolina in actions for the wrongful death of a person struck by a train, where the plaintiff relies upon the doctrine of last clear chance, that under the law of the state, by which we are bound, the plaintiff has the burden of showing:

"1. That at the time the injured party was struck by the train he was down, or in an apparently helpless condition on the track;

"2. That the engineer saw, or, by the exercise of ordinary care in keeping a proper lookout could have seen the injured party in such condition in time to have stopped the train before striking him; and

"3. That the engineer failed to exercise such care, as the proximate result of which the injury occurred."

Mercer v. Powell, 218 N.C. 642, 649, 12 S.E.2d 227; Justice v. Southern R. R., 219 N.C. 273, 275, 13 S.E.2d 553.

Thus it has been held that if the engineer sees a person sitting on the railroad track in a position that is not apparently helpless, the engineer need not check the speed of his train for he has the right to assume until the last moment that the man will get off the track and out of danger.

For example, it was held in Lemings v. Southern R. R., 211 N.C. 499, 191 S.E. 39, that the evidence was insufficient to support the submission of the issue of the last clear chance where the deceased was killed by an engine while sitting on the end of a cross tie of the railroad track in the daytime in substantially the same position as the deceased in the pending case. The engineer had a clear view of the track for 3000 feet before reaching the scene of the accident but the court exonerated him from negligence because there was no evidence that the deceased as he sat upon the cross tie, and as the train approached, was in a helpless condition or even in an apparently helpless condition, and therefore the engineer had the right to assume that he would get out of the way. Precisely similar were the circumstances and the rulings in Reep v. Southern Railroad, 210 N.C. 285, 186 S.E. 318, and Russ v. Atlantic Coast Line Railroad, 220 N.C. 715, 18 S.E.2d 130.

In Mercer v. Powell, 218 N.C. 642, 648, 649, 12 S.E.2d 227, 230, it was said:

"No presumption of negligence on the part of defendant railroad arises from the mere fact that the mangled body of plaintiff's intestate was found on the track. This is the uniform holding in the decisions of this court. Upton v. South Carolina & G. E. R. R., 128 N.C. 173, 38 S.E. 736; Clegg v. Southern R. R., 132 N.C. 292, 43 S.E. 836; Austin v. Southern R. R., 197 N.C. 319, 148 S.E. 446; Henry v. Norfolk Southern R. R., 203 N.C. 277, 165 S.E. 698; Rountree v. Fountain, 203 N.C. 381, 166 S.E. 329; Ham v. Greensboro Ice & Fuel Co., 204 N. C. 614, 169 S.E. 180; Harrison v. Southern R. R., 204 N.C. 718, 169 S.E. 637; Fox v. Barlow, 206 N.C. 66, 173 S.E. 43; Cummings v. Atlantic Coast Line R. R., supra (217 N.C. 127, 6 S.E.2d 837).

\*　　\*　　\*　　\*　　\*　　\*

"The doctrine of last clear chance does not apply in cases where the trespasser or licensee upon the track of a railroad, at the time, is in apparent possession of his strength and faculties, the engineer of the train which produces the injury having no information to the contrary. Under such circumstances the engineer is not required to stop the train or to even slacken its speed, for the reason he may assume until the very moment of impact that such person will use his faculties for his own protection and leave the track in time to avoid injury. Redmon v. Southern R. R., supra, 195 N.C. 764, 143 S.E. 829; Rimmer v. Southern R. R., 208 N.C. 198, 179 S.E. 753; Pharr v. Southern R. R., 133 N.C. 610, 45 S.E. 1021; Reep v. Southern R. R., 210 N.C. 285, 186 S.E. 318; Lemings v. Southern R. R., 211 N.C. 499, 191 S.E. 39; Sherlin v. Southern R. R., 214 N.C. 222, 198 S.E. 640."

See also Justice v. Southern R. R., 219 N. C. 273, 13 S.E.2d 553.

In George v. Winston-Salem Southbound R. R., 215 N.C. 773, 3 S.E.2d 286; Id., 217 N.C. 684, 9 S.E.2d 373, second appeal, the engineer said that he did not see a man killed by his train although there was a clear view of the point of the accident from the engine for a long distance; and the court held that the evidence was insufficient to support the last clear chance doctrine since there was nothing to show that the man was down upon the track in a helpless condition when he was killed. The court quoted with approval (217 N.C. 686, 9 S.E. 2d 375) the following passage from Cummings v. Atlantic Coast Line R. R., 217 N. C. 127, 131, 132, 6 S.E.2d 837; " \* \* \* it may be inferred from the evidence as to the physical condition of the body and accompanying signs at the scene that the intestate was truck and killed by a train. Yet these physical facts present no reasonable theory to the exclusion of many others as to the circumstances under which the accident occurred. In what position was intestate when struck? The evidence is consonant with any of many theories which may be advanced with equal force, but all of which are speculative and rest in mere conjecture. The probabilities arising from a fair consideration of such evidence affords no reasonable certainty on which to ground a verdict upon an issue of last clear chance."[1]

---

[1] The decisions on which the appellant especially relies do not differ in principle from those referred to above; see, Powell v. Southern R. R., 125 N.C. 370, 34 S.E. 530; Henderson v. Atlantic Coast Line R. R., 159 N.C. 581, 75 S.E. 1092;

In the light of these decisions, we find no error in the dismissal of the pending case by the District Court; and it seems clear that the North Carolina courts, if the case had been submitted to them, would have taken the same course. Even if it be presumed that the deceased remained in the same position upon the track in which he was seen by the passing motorist, within one-half hour of his death, until he was hit, and that the engineer was not keeping a sufficiently careful lookout, there can be no recovery; for even if the engineer had seen the man in the indicated position, he could rightfully have assumed that the man would take himself out of the place of danger before it was too late. On the other hand, if the deceased did not remain seated on the rail, his place and his attitude, whether on or off the track, whether upright or prone, and whether or not recognizable as a human being during the period in which he could have been seen from the engine and it could have been stopped before injury, are matters of pure speculation as to which the plaintiff has failed to offer the proof which under the North Carolina law he must supply.

Affirmed.

Hill v. Norfolk Southern R. R., 169 N.C. 740, 86 S.E. 609; Jenkins v. Southern R. R., 196 N.C. 466, 146 S.E. 83; Barnes v. Atlantic Coast Line R. Co., 168 N.C. 512, 84 S.E. 805; Carter v. Southern R. R., 135 N.C. 498, 47 S.E. 614; McArver v. Southern R. R., 129 N.C. 380, 40 S.E. 94; Pharr v. Southern R. R., 119 N.C. 751, 26 S.E. 149; Caudle v. Seaboard Air Line R. R., 202 N.C. 404, 163 S.E. 122; Smith v. Salisbury & S. R. R., 162 N.C. 29, 77 S.E. 966; Marks v. Atlantic Coast Line R. R., 133 N.C. 89, 45 S.E. 468. On the facts of the particular cases, some of the earlier decisions seem to apply the rules as to the duty of the railroad with greater strictness; but we must assume the responsibility of applying the law to the facts of the pending case, and we find the more recent cases cited in the body of this opinion more persuasive.